UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

SHERRY FOSTER                                                    CASE NO: 22-10665
    DEBTOR                                                   CHAPTER 7


SHERRY FOSTER
    PLAINTIFF

VERSUS                                                          ADVERSARY NO.: 23-1002

CAPITAL CITY CREDIT, INC., ET AL
    DEFENDANTS


**MEMORANDUM OPINION**

This matter came on for trial on June 8, 2023, on the debtor's adversary proceeding

seeking: (a) a finding that multiple automatic stay violations occurred, (b) to impose sanctions

for willful violations of the automatic stay, and (c) a turnover order as to of certain post-petition

garnishments of wages.[1]  Specifically, Sherry Foster ("Debtor") alleges in her Amended

Complaint[2] that the defendants, Capital City Credit, Inc. ("Capital"), Capital's counsel, Richard

D. Bankston ("Mr. Bankston") and Richard D. Bankston, Attorney at Law, Inc. ("Bankston Law

Firm") (collectively "Defendants"), willfully violated the automatic stay under 11 U.S.C. § 362

by failing to stop garnishing Debtor's wages after she filed her Chapter 7 petition on December

---

[1] Though not styled as a request for turnover, Debtor's prayer for relief includes a request for refund of wages garnished post-petition and shall be treated as a demand for turnover pursuant to U.S.C. § 542.  At the time of trial, however, the Debtor had already received the post-petition funds and therefore turnover as a remedy has been rendered moot.

[2] Amended Complaint, P-27.

16, 2022.  Baton Rouge Constable's Office ("Constable") was initially a named defendant but was dismissed as a party on Debtor's motion.[3]

Debtor seeks actual and punitive damages, including attorney's fees and costs.   Debtor also requests a finding that Debtor's post-petition wages are "legally exempt" from seizure anyway pursuant to La. R.S. 20:32.[4]

Mr. Bankston sought summary judgment[5] dismissing him from the adversary. On June 8, 2023, both the Motion for Summary Judgment[6] and trial of the Amended Complaint[7] filed by Debtor came before the court.  After hearing argument of counsel on summary judgment, and for the reasons orally rendered, the court denied summary judgment[8] and proceeded with the trial. Upon conclusion of the trial, the court afforded the parties until June 22, 2023, to file post-trial memoranda.[9]  Thereafter, the court took the matter under advisement.  The court now renders its ruling.

---

[3] Order Granting Dismissal, P-53.

[4] Debtor included this in her prayer for relief in her amended complaint, but she did not address it in her post-trial memorandum.

[5] Motion for Summary Judgment, P-21.

[6] *Id.*

[7] Amended Complaint, P-27.

[8] Order Denying Summary Judgment, P-55.

[9] Defendants' Post-Trial Memorandum. P-61; Plaintiff's Post-Trial Memorandum, P-63.

**Jurisdiction, Venue and Core Status**

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper pursuant to 28 U.S.C. § 1409(a). The matter constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (E), and (O).

**Background**

Capital was awarded a judgment against Debtor on June 21, 2007,[10] and revived its judgment on February 6, 2017.[11] In order to collect the amount due from Debtor, Capital began garnishing Debtor's wages well prior to her filing a bankruptcy petition on December 16, 2022.[12]

Debtor alleges that Defendants made the following post-petition wage garnishments in violation of the automatic stay under 11 U.S.C. § 362: (1) $96.91 on December 27, 2022, (2) $104.22 on January 4, 2023, and (3) $77.60 on January 11, 2023.[13]

---

[10] Capital's Proof of Claim, Exhibit P6, p. 5.

[11] *Id.* at p. 6.

[12] Case no. 22-10665.

[13] At trial, Debtor raised for the first time two additional amounts withheld from Debtor's wages post-petition: $83.84 on January 23, 2023, and $92.47 on January 25, 2023. Sgt. Randall Cunningham of the Constable's Office testified that the Constable returned these funds to Debtor's employer due to Debtor's bankruptcy filing, rather than forwarding them to Mr. Bankston. Mr. Bankston also testified that he did not receive these funds.

Defendants acknowledge[14] that the $104.22[15] and $77.60[16] garnishments were made post-petition and voluntarily turned over those funds to Debtor prior to trial.[17]  As to the $96.91 garnishment, however, Defendants contend it was made before the bankruptcy was filed and therefore did not violate the stay and should not be turned over. Thus, the remaining issues for trial were whether the $96.91 garnishment was made pre- or post-petition and whether Debtor is entitled to damages related to Defendants' actions and conduct with respect to any of the three garnishments.

### The $96.91 Garnishment

Debtor contends that Defendants violated the automatic stay by garnishing $96.91 post-petition on December 27, 2022.  Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy case "operates as a stay … of":

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

---

[14] Defendants' Post-Trial Memorandum, P-61, p. 3.

[15] On December 22, 2022, Debtor's employer withheld $110.87 from her wages and sent the garnished wages to the Constable.  Exhibit P3, pp. 1-2; Exhibit P9, p. 2.  The Constable deducted a $6.65 fee before sending $104.22 to Mr. Bankston on January 4, 2023. Exhibit P10.

[16] On January 5, 2022, Debtor's employer withheld $82.55 from her wages and sent the garnished wages to the Constable.  Exhibit P3, pp. 5-6; Exhibit P9, p. 3. The Constable deducted a $4.95 fee before sending $77.60 to Mr. Bankston on January 11, 2023.  Exhibit P10.

[17] Defendants were forced to file a Motion to Deposit Funds into the Court Registry [P-12] because allegedly Debtor's counsel refused to accept the payment due to a one cent math error.  Rather than causing more delay and administrative inconvenience by having the funds held in the registry, the Court ordered the $181.82 to be turned over to Debtor through her counsel without further delay [P-37].

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; …[18]

Estate property, to which the automatic stay applies, is defined in section 541 of the Bankruptcy Code and includes "all legal or equitable interests of the debtor in property as of the commencement of the case."[19] Therefore, pre-petition wage garnishments, which necessarily means the debtor no longer had an interest in the property on the filing date, do not violate the stay.  But any post-petition garnishment made is undoubtedly a violation of the stay, irrespective of notice or actual knowledge.

Debtor alleges that Defendants garnished $96.91 post-petition on December 27, 2022. However, the facts proven at trial show that Debtor's employer withheld $103.09 from her wages on December 15, 2022, the day before she filed her bankruptcy petition.[20] Her employer then sent the garnished wages to the Constable.[21]  The Constable deducted a $6.18 fee before sending $96.91 to the Bankston Law Firm on December 27, 2023.[22]  Although Mr. Bankston testified, without challenge, that his office received the funds on December 27, 2023, Debtor's wages were actually garnished the day before the case was filed.

---

[18] The Fifth Circuit has held that this "automatic stay operates as a self-executing injunction."  *Campbell v. Countrywide Home Loans, Inc.,* 545 F.3d 348, 354–55 (5th Cir. 2008).

[19] 11 U.S.C. § 541(a) (emphasis added).

[20] ADP Garnishment Services Disbursement Checks from Debtor's Employer, Exhibit P9, p. 1.

[21] Debtor's employer, Albertsons, LLC, used ADP Garnishment Services to deduct the funds and send them to the Constable.

[22] Constable's Garnishment Transactions Report dated January 26, 2023, Exhibit P10.

The Court holds that the $96.91 garnishment did not violate the automatic stay pursuant to section 362, and therefore, certainly no sanctions for willfully violating the stay are warranted with respect to that garnishment.  Likewise, the $96.91 being held by Defendants is not subject to a turnover order because it does not constitute property of the estate.  Section 542 of the Bankruptcy Code, entitled "Turnover of property to the estate," provides in pertinent part:

> (a) Except as provided in subsection (c) or (d) of this section, an entity, …, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

The $96.91 can neither be recovered by the trustee for administration by the estate[23] nor claimed as exempt by the Debtor.  Section 363(b)(1) of the Bankruptcy Code, entitled "Use, sale, or lease of property," provides in pertinent "[T]he trustee, after notice and a hearing, may use, sell, or lease, … property of the estate, …"[24]  Again, this ability is contingent upon the funds being property of the estate.  And similarly, the $96.91 is already the net portion of the 25% of net wages not subject to exemption by the Debtor under La. R.S. 13:3881.

### Damages under Section 362(k)

Turning to the latter two garnishments, Debtor seeks damages against Defendants for "willful violation" of the automatic stay under 11 U.S.C. § 362(k), which provides, "… an individual injured by any willful violation of a stay provided by this section shall recover actual

---

[23] It is certainly possible, but highly unlikely, the chapter 7 trustee would elect to exercise his avoidance powers to try to recover the $96.91 as an avoidable transfer.

[24] 11 U.S.C. § 363(b)(1) (emphasis added).

damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

The stay under section 362 is "automatic" in that it occurs by operation of law and is "self-executing."[25]   This means that parties who do not yet have notice of the bankruptcy and the automatic stay, "may violate the stay without realizing that it has taken effect."[26]   The Bankruptcy Code does not impose sanctions for unknowing violations. Only "willful violations" of the stay are subject to sanctions. A "willful violation" under section 362(k) has three elements, all of which must be present: "(1) [The alleged violator] must have known of the existence of the stay; (2) [its] acts must have been intentional; and (3) [its] acts must have violated the stay."[27] Debtor bears the burden of proving those three elements by a preponderance of the evidence.[28]

Defendants do not dispute that the $104.22[29] and $77.60[30] garnishments were initiated post-petition, and therefore were, at a minimum, technical stay violations by someone. Ironically, the most likely violator was the Constable.  Regardless, Defendants have

---

[25] *Campbell v. Countrywide Home Loans, Inc.,* 545 F.3d at 354-55.

[26] 3 Collier on Bankruptcy ¶ 362.12 (16th 2023).

[27] *Repine v. Repine (In re Repine)*, 536 F.3d 512, 519 (5th Cir. 2008) (citing *Brown v. Chestnut (In re Chestnut),* 422 F.3d 298, 302 (5th Cir.2005)).

[28] *Campbell,* 545 F.3d at 355; *Gates v. RAC Acceptance Texas, LLC (In re Gates),* 621 B.R. 129, 136 (Bankr. W.D. Tex. 2020).

[29] On December 22, 2022, Debtor's employer withheld $110.87 from her wages and sent the garnished wages to the Constable.  Exhibit P3, pp. 1-2; Exhibit P9, p. 2.  The Constable deducted a $6.65 fee before sending $104.22 to Mr. Bankston on January 4, 2023. Exhibit P10.

[30] On January 5, 2022, Debtor's employer withheld $82.55 from her wages and sent the garnished wages to the Constable.  Exhibit P3, pp. 5-6; Exhibit P9, p. 3. The Constable deducted a $4.95 fee before sending $77.60 to Mr. Bankston on January 11, 2023.  Exhibit P10.

understandably focused their attention on persuading the court that their actions were not willful (and thus not sanctionable).

At the outset, retention of the funds received by Defendants after the bankruptcy was filed was likely not a stay violation at all, much less one warranting sanctions for willful conduct. Indeed, in *City of Chicago, Illinois v. Fulton*,[31] the U.S. Supreme Court recently held that "mere retention of estate property after the filing of a bankruptcy petition does not violate § 362(a)(3) of the Bankruptcy Code."[32]  It also held that "§ 362(a)(3) prohibits collection efforts outside the bankruptcy proceeding that would change the status quo."

Debtor has neither shown nor even alleged that Capital applied the $181.82 to the debt owed.  Prior to the voluntary release of the funds, the Bankston Law Firm held the garnished funds in its trust account.  That action merely maintained the status quo.  As a result, it was not an action taken in violation of the stay under § 362(a).  Applying *Fulton* to the case at bar, Defendants did not violate the stay by failing to immediately turn over the funds.

Even had Debtor met her burden of proving a stay violation, however, Debtor has not shown willfulness. The following relevant facts are not in dispute.  First, the notice of Debtor's petition was mailed to Capital and its counsel, Mr. Bankston, five days after the filing, or on December 21, 2022, through the Bankruptcy Noticing Center.[33]  Mr. Bankston testified that his

---

[31] *City of Chicago, Illinois v. Fulton*, 208 L. Ed. 2d 384, 141 S. Ct. 585, 592 (2021).

[32] In *City of Chicago, Illinois v. Fulton*, the City of Chicago impounded the debtor's vehicle pre-petition. After filing the bankruptcy petition, the debtor requested return of the vehicle, and the City refused.  The debtor maintained that the City violated the automatic stay by retaining possession.  The bankruptcy court agreed, and the appellate court affirmed.  The Supreme Court granted certiorari and held that the City's retention of the vehicle was not an "exercise of control over property of the estate." Therefore, the City did not violate section 362(a)(3).

[33] Case no. 22-10665, P-14.

office never receives notices of filing by electronic email notification.  The Debtor provided no evidence refuting this statement.  Second, Mr. Bankston testified that he received this notice on December 28, 2022.[34]  Third, upon receiving notice, the Bankston Law firm faxed a letter to the Constable the very next morning asking it to "place garnishment proceedings in abeyance."[35]

Meanwhile, on December 22, 2022, after the bankruptcy petition was filed but six days before Defendants received notice, Debtor's employer withheld $110.87 from her wages and sent the garnished wages to the Constable.[36]  Defendants had no way of knowing about this.  Then Constable deducted a $6.65 fee before sending $104.22 to Mr. Bankston on January 4, 2023.[37]

Approximately a week after both the Constable and Defendants learned of the bankruptcy, or on January 5, 2022, Debtor's employer again withheld $82.55 from her wages and sent the garnished wages to the Constable.  The Constable deducted a $4.95 fee before sending $77.60 to the Bankston Law Firm on January 11, 2023.[38]  Therefore the third garnishment was clearly made after Defendants learned of the bankruptcy.

The court finds that the Constable violated the automatic stay with respect to the second and third garnishments.  And although Debtor dismissed the Constable from this proceeding, the

---

[34] Derren Johnson, an expert on bankruptcy practice in this district, testified that the general practice is for debtor's counsel to call or fax debtor's employer or the creditor to stop the garnishment as soon as the petition is filed.  That was not done in this case, so Mr. Bankston had no actual notice of the filing until December 28, 2022.

[35] Exhibit D1 is the abeyance letter dated December 29, 2022, and Exhibit D2 is confirmation that the fax was received by the Constable at 9:56 a.m. that day.

[36] Debtor's Pay Advice, Exhibit P3, pp. 1-2; ADP Garnishment Services Disbursement Checks from Debtor's Employer, Exhibit P9, p. 2.

[37] Constable's Garnishment Transactions Report dated January 26, 2023, Exhibit P-10.

[38] Debtor's Pay Advice, Exhibit P3, pp. 5-6; ADP Garnishment Services Disbursement Checks from Debtor's Employer, Exhibit P9, p. 3.

court finds the testimony of the representative of the Constable credible and completely void of any suggestion that his office committed knowing and willful violations.  Thus, had the Constable remained a defendant this court would not have been inclined to impose sanctions against it for what clearly seemed to be a timing issue in a large office rather than a willful disregard for the automatic stay and this court.

Instead of pursuing the Constable, Debtor contends that Mr. Bankston and the Bankston Law Firm[39] willfully violated the stay by depositing funds received by the Constable for Debtor's garnishment after they were aware of the bankruptcy.  Mr. Bankston testified that he was unaware of the timing of the garnishments until receiving a court summons in this adversary. Specifically, he testified that the Constable's Check Detail Overflow Report[40] generally fails to show the date on which the funds were garnished before being sent to the Constable. This report also contains a myriad of garnishees rather than just a report concerning the Debtor.  Mr. Bankston also testified that it is typical for him to continue to receive funds that were garnished pre-petition long after the petition is filed because there is often a significant time delay between when the wages are withheld by the employer and when the creditor, or creditor's counsel, actually receives them from the Constable.  Sgt. Randall Cunningham of the Constable corroborated this testimony.  He testified that it could take three weeks up to six months for the Constable to sends funds to counsel.

---

[39] Debtor offered no testimony or evidence suggesting that Capital City Credit, Inc. did anything warranting sanctions.

[40] Constable's Check Detail Overflow Report, D10.

Based on the credible testimony of Mr. Bankston and the fact that the Constable's report does not show the date the funds were garnished, the court fails to see anything remotely close to a willful violation here. To the contrary, Mr. Bankston faxed the abeyance letter to the Constable the very next morning after receiving notice of the bankruptcy. The testimony of Sgt. Cunningham as to the typical time delay between receipt of funds by the Constable and forwarding them to counsel further supports this court's finding that Defendants took no willful, sanctionable steps in violation of the stay after receiving notice of the bankruptcy.

Finally, the court is persuaded by the testimony of both Mr. Bankston and Derren Johnson, a consumer bankruptcy lawyer with 36 years of practice in this court,[41] that the common practice in this district is to handle these kinds of matters informally with a phone call or two rather than through contested litigation. The court believed Mr. Bankston when he testified that a simple phone call would have avoided this trial altogether. His office notified the Constable less than 24 hours after receiving notice of the bankruptcy and made efforts to return the funds without litigation. This court sees little else Mr. Bankston could have done. Therefore, this court is satisfied that Defendants did not willfully violate the automatic stay under section 362(k). Stated another way, the Debtor has failed to carry her burden of proof that Defendants' acts after learning of the bankruptcy were intentional and that those acts (retention of funds) violated the stay.

And finally, it bears mentioning that even if Defendants violated the stay in a willful manner (*i.e.*, the act of holding onto the proceeds with knowledge of the bankruptcy filing is

---

[41] Ms. Johnson was allowed to testify as an expert in a very limited capacity as to the custom in this district for consumer bankruptcy lawyers when faced with a garnishment immediately after the filing date.

willful), the court does not believe, based on the credibility of Mr. Bankston's and Ms. Johnson's testimony, that sanctions are warranted here. Section 362(k) only mandates sanctions for actual damages ("shall recover …), affording trial courts broad discretion with respect to punitive damages ("in appropriate circumstances, may recover …").[42] The undisputed evidence presented at trial makes crystal clear that the Debtor suffered no <u>actual</u> damages. First and foremost, she is not legally responsible for paying her attorney to prosecute the case. The court acknowledges that a split of authority exists with regards to entitlement to an award of attorney fees when the plaintiff is not legally responsible to pay. Without guidance directly on point from the Supreme Court or the Fifth Circuit, this court believes the more reasoned approach is to not bestow a windfall upon a debtor or her pro bono attorney for a hypothetical damage.[43] After all, section 362(k) mandates only actual damages.[44] Certainly posed with different facts, this court might justify a punitive award of fees for particularly egregious conduct. This is not that case.

Further, she paid no filing fee. She has recovered the $181.82 in post-petition funds garnished and the court finds that any interest accruing on that delayed recovery between the filing date and receipt of the funds (easily less than $10 here) was almost entirely due to the decision to litigate rather than work out the matter with a phone call or two.

_____

[42] 11 U.S.C. § 362(k).

[43] See, *e.g.*, *In re Hedetneimi*, 297 B.R. 837, 843 (Bankr. M.D. Fla. 2003) ("Because Debtor is represented pro bono through Central Florida Legal Services and is thus not responsible for payment of attorney's fees, she is not entitled to an award thereof."); *In re Thompson*, 426 B.R. 759, 767 (Bankr. N.D. Ill. 2010) (holding that the debtor could not recover attorney's fees because his counsel had waived the right to collect them from him due to his financial condition); and *Everette v. Ocwen Loan Servicing LLC (In re Everette)*, No. 10-20842, 2014 WL 4385741, at *4 (Bankr. S.D. Ga. Sept. 4, 2014) (holding that debtor had failed to state a claim for attorney's fees because "[a]n award of attorneys' fees is available only to debtors who pay an attorney").

[44] 11 U.S.C. § 362(k).

The Debtor testified that what she really wanted was accountability. This ruling, in the court's opinion, provides just that by confirming that the $181.82 already recovered by her through a separate court order, along with her discharge, is all to which she is entitled.  Given the ruling that no sanctions are warranted, the court need not address counsel's affidavit concerning the time spent preparing for trial.

### La. R.S. 20:32

Finally, perhaps as an afterthought or in the alternative, Debtor contends that her post-petition wages are "legally exempt" pursuant to La. R.S. 20:32, which provides, "No person engaged in lending money at more than ten per cent per year, nor any member, officer, agent, or employee of any such person, shall employ garnishment process against any legally exempt salary or wages of a debtor in an attempt to enforce payment of a debt."  Because Defendants have stopped the garnishments and turned over all post-petition garnished wages, this issue of state law is moot.   Indeed, any further garnishments would be nullified as being in violation of the automatic stay anyway.

### Conclusion

Defendants are entitled to retain and apply the $96.91 sent to the Bankston Law Firm by the Constable because the funds were withheld from Debtor's wages pre-petition and therefore neither violated the automatic stay nor are subject to turnover for administration or exemption.

And though the $104.22 and $77.60 garnishments violated the automatic stay because they were made post-petition, Debtor failed to prove that Defendants violated the automatic stay,

much less in a willful manner warranting sanctions.  Therefore, Debtor is not entitled to an award of actual damages (she has none) or discretionary punitive damages. The Court will enter a separate judgment.

Baton Rouge, Louisiana, June 30, 2023.

**s/ Michael A. Crawford**
MICHAEL A. CRAWFORD
UNITED STATES BANKRUPTCY JUDGE